United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

PANGEA LEGAL SERVICES,
Plaintiff,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,
Defendants.

Case No. 26-cv-00321-HSG (PHK)

**ORDER RE: DISCOVERY LETTER BRIEF**

Re: Dkts. 30, 34

All discovery matters in this case have been referred to the undersigned. *See* Dkts. 32, 33. Now before the Court is a Joint Discovery Letter Brief concerning the volume of responsive records that Defendants have the capacity to process and produce. *See* Dkt. 34. The Court finds the matter suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b).

**BACKGROUND**

Before filing the instant action, Plaintiff submitted Freedom of Information Act ("FOIA") requests to Defendants U.S. Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE") on September 22, 2025, and to Defendant U.S. Customs and Border Protection ("CBP") on October 24, 2025. *See* Dkt. 1. The FOIA requests sought records "describing guidance, policies, directives, training, and communications regarding arrest and detention operations in the San Francisco Area of Responsibility ("SF-AOR") and the Bay Area from November 1, 2024 through the date of their requests (September 22, 2025 and October 24, 2025, respectively), including records related to enforcement targets or quotas." [Dkt. 34 at 1]. Plaintiff filed the underlying Complaint on January 12, 2026, after Defendants failed to issue a final response to Plaintiff's FOIA requests. *Id.*

Defendants have since agreed to monthly productions of records responsive to Plaintiff's FOIA requests. [Dkt. 34 at 3]. ICE will continue to issue monthly productions, DHS was to issue its first production by October 15, 2026, and CBP will issue its first production beginning on or about November 16, 2026. *Id.* The Parties dispute, however, the volume of responsive records that Defendants have the capacity to process and produce on a monthly basis. [Dkt. 34 at 2]. Specifically, Plaintiff argues that Defendants' "self-imposed standard" of 500–750-page monthly processing caps contravenes FOIA's statutory obligations requiring agencies to make requested records "promptly available." [Dkt. 34 at 3]. Plaintiff further questions whether Defendants have provided sufficient factual support for their claimed capacity limitations. *Id.* Defendants maintain that "Plaintiff's current requested production schedule (of 3000 pages per month) is unreasonable and beyond the agencies' capabilities." [Dkt. 34 at 4].

On October 22, 2026 the Court ordered each agency to supplement its briefing by submitting a declaration "from the most knowledgeable ediscovery personnel working on these FOIA requests explaining in detail, **corroborated with documentary evidence**, the facts which show how and why each agency is unable to process more than the documents per month each has committed to in this case and explaining in detail the factual bases for the limitations on the number of documents per month each agency has committed to in this case." [Dkt. 35].

## LEGAL STANDARD

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

The relevant legal standards for discovery are well-known. Rule 26(b)(1) delineates the scope of discovery in federal civil actions and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the commonsense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285

F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

With regard to proportionality, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. "A party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." *Id.*

As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (*citing Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). Similarly, a district court's determination as to proportionality of discovery is within the district court's discretion. *See Jones v. Riot Hospitality Grp. LLC*, 95 F.4th 730, 737-38 (9th Cir. 2024) (finding district court did not abuse discretion on proportionality ruling). Ultimately, "the timing, sequencing and proportionality of discovery is left to the discretion of the Court." *Toro v. Centene Corp.*, No. 19-cv-05163 LHK (NC), 2020 WL 6108643, at *1 (N.D. Cal. Oct. 14, 2020).

**DISCUSSION**

Having considered the briefing of the Parties [Dkt. 34] and the supplemental declarations submitted by each Defendant [Dkt. 36], and pursuant to the Court's inherent authority to manage discovery, the Court resolves the disputes identified in the Discovery Letter Brief as follows:

All three declarations state that each department operates on a "first in first out" system and

all three declarants state that increasing the processing rate here would potentially require diverting processing staff and resources from other FOIA requests. However, as time has passed since the FOIA request at issue here, by the nature of a FIFO system, the request here should be gaining additional attention and resources for processing by operation of the departments' stated procedures. That is, as more time passes, the processing time for the FOIA request here gets older and thus should be given more priority for processing anyway, by their own internal operating procedures as stated.

Further, the declarations indicate that the processing agreed to previously in this matter reflects a "typical" processing rate, but all three declarations state that the processing rate could increase ("i.e., due to the nature of the search or documents" for example) and all three agencies state that they are "willing to revisit" the processing rate and that they will "endeavor" to process the FOIA request here "at a faster rate" if the agency is able to do so. All three declarations note that "simple" FOIA requests are typically processed more quickly. All three declarations state conclusorily that the FOIA request here is "complex" but no declarant identifies the standards or criteria for distinguishing between a "simple" versus "complex" FOIA request and none of them provide any justification for labelling this FOIA request as necessarily complex and thus entitled to a slower processing rate.

The FOIA requests here have been pending since September 22, 2025 (for the request directed at DHS and ICE) and October 24, 2025 (for the request directed at CPB). [Dkt. 1 at 2]. As noted, the Court concludes that the processing rate for these FOIA requests should have increased naturally by operation of each department's own stated "FIFO" procedures, under which older FOIA requests get more priority and attention as they age. Therefore, the fact that these agencies agreed to a flat "typical" processing rate for this FOIA request several months ago does not reflect the agencies' stated procedures for essentially expediting FOIA requests as they age.

Accordingly, and in light of the submissions and appropriate legal standards, the Court **ORDERS** each department to increase its processing rate for their respective FOIA requests to 1,000 documents per month for the months of December 2026 to January 2027; **ORDERS** each department to increase its processing rate to 1,500 documents per month for the months of February

2027 to March 2027; and increase its processing rate to 2,000 documents per month for the months of April 2027 to May 2027. *See, e.g.*, *Am. C.L. Union Found. of S. California v. United States Immigr. & Customs Enf't*, 705 F. Supp. 3d 1077, 1092 (C.D. Cal. 2023) (ordering process rate of 1,000 pages per month to start and an increased process rate of 3,000 pages per month thereafter); *see also Castillo Gomez v. U.S. Citizenship & Immigr. Servs.,* No. 26-CV-06134-NW, 2026 WL 1773909, at *9 (N.D. Cal. June 21, 2026) ("To that end, it is not unusual for courts to order agencies to increase the processing and production rate of documents that are subject to a FOIA request—in other words, requiring agencies to prioritize certain requests like [Plaintiff] seeks here.").

## CONCLUSION

Accordingly, for the reasons stated herein, Plaintiff's motion to increase the processing rate [Dkt. 34] is **GRANTED IN PART.** The Parties are **ORDERED** to file a Joint Status Report on each of Friday February 5, 2027; on April 2, 2027; and on June 4, 2027 to report on the status of completing the processing of the FOIA request by each department as of the date of each such Status Report.

This Order **RESOLVES** Dkts. 30, 34.

**IT IS SO ORDERED.**

Dated: November 19, 2026

PETER H. KANG
United States Magistrate Judge